**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| LINDA POLEN<br><br>v.<br><br>POTTSTOWN HOSPITAL – TOWER HEALTH | CIVIL ACTION<br><br>NO. 18-4025 |
|---|---|

**MEMORANDUM**

**Baylson, J.** **December 16, 2019**

## I. INTRODUCTION

This employment action arises from Defendant Pottstown Hospital – Tower Health's dismissal of Plaintiff Linda Polen from her position as Director of Radiology. After Plaintiff was dismissed, she filed a Complaint alleging three counts of employment discrimination and retaliation:

1. **Count I**: Retaliation in violation of the Family and Medical Leave Act;
2. **Count II**: Discrimination in violation of the Age Discrimination in Employment Act; and
3. **Count III**: Discrimination in violation of the Americans with Disabilities Act.

(Compl. ¶¶ 55-80.) Before this Court is Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's motion will be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was the Director of Radiology at Pottstown Hospital from 2011 to 2018, where she supervised over ninety employees within the Radiology Department. (Pl.'s Statement of

Undisputed Material Facts ("SUMF") ¶¶ 3, 5, 111, ECF 16.) Starting in 2016, Plaintiff reported to Chief Nursing Officer Theresa Pierce. (Pl.'s SUMF ¶ 9.) CNO Pierce was part of the Hospital's leadership team, along with Chief Executive Officer Richard Newell. (Pl.'s SUMF ¶ 8.)

In 2017, Plaintiff had shoulder surgery, which required her to take FMLA leave from June 13, 2017 to July 13, 2017. (Def.'s SUMF ¶¶ 18-19, ECF 13.) A few weeks after Plaintiff returned to work, she received an annual performance review from CNO Pierce. (Pl.'s SUMF ¶ 15; Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") Ex. G.) In her review, Plaintiff's performance was consistently rated as meeting or exceeding expectations, including in areas concerning her leadership and teamwork abilities. (Pl.'s Opp. Ex. G at 3-8) When CNO Pierce met with Plaintiff about her review, CNO Pierce expressed concern about losing "seasoned members of her team" because of their age. (Def.'s SUMF ¶ 15.) Plaintiff assured CNO Pierce that she intended to work for at least five more years. (Polen Dep. 73:20-74:11, Jan. 3, 2019, Def.'s Mot. for Summ. J. ("Def.'s MSJ") Ex. 6, ECF 13.)

Plaintiff later required another shoulder surgery, and took FMLA leave from February 13, 2018 to March 12, 2018. (Pl.'s SUMF ¶ 36.) When she returned, Plaintiff attended physical therapy and discussed her progress with CNO Pierce. She told CNO Pierce that her recovery was not progressing as she had hoped, and that she might "have a total shoulder [surgery]," to which CNO Pierce responded, "[o]h, you would be out for a long time. (Pl.'s SUMF ¶¶ 39-42.)

Several days after Plaintiff returned from her second FMLA leave, she met with CEO Newell and HR Director Ruta Ore. During the meeting, CEO Newell criticized certain Facebook posts Plaintiff made while she visited the Cayman Islands during her FMLA leave. While on leave, Plaintiff went to the Cayman Islands to take care of several personal issues. (Pl.'s Opp. Ex.

M at LP238-39.)[1] Plaintiff posted a picture on Facebook of herself standing in the water while she was in the Cayman Islands. (Def.'s SUMF ¶ 27.) In the meeting, CEO Newell accused Plaintiff of swimming during her leave and said that if she could swim, then she could return to work. (Pl.'s SUMF ¶¶ 85-87.)[2]

During the same meeting in which CEO Newell discussed Plaintiff's Facebook post, the group also discussed Lead Radiology Technician Deborah March. (Def.'s SUMF ¶ 30.) March was one of two lead technicians who reported to Radiology Operations Manager Susan DeSanto, who in turn reported directly to Plaintiff. (Pl.'s SUMF ¶ 47.) Multiple employees had complained to CEO Newell about March, and the Hospital decided to suspend March pending the results of an internal investigation by HR Director Ore. (Def.'s SUMF ¶¶ 31-33.) During March's suspension, the other Lead Radiology Technician, Brenda Swankoski, assumed March's duties. (Def.'s SUMF ¶ 48.)

Following the investigation, CEO Newell, CNO Pierce, Plaintiff, and HR Director Ore met and decided to terminate March's employment because of the hostile work environment she

---

[1] The evidence of Plaintiff's reason for visiting the Cayman Islands is contained within Plaintiff's EEOC Charge. Defendant objects to the use of this Charge because, in its view, the Charge is hearsay. (Def.'s Rep. to Pl.'s SUMF ¶ 89.) On a motion for summary judgment, however, "hearsay statements can be considered . . . if they are capable of admission at trial." Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d Cir. 2000). Because Plaintiff's direct testimony could establish this contested fact at trial, the Court will consider it in deciding Defendant's Motion for Summary Judgment.

[2] The parties disagree about whether CEO Newell criticized Plaintiff for swimming, or for the fact that she posted a picture from the Cayman Islands. (Compare Pl.'s SUMF ¶¶ 85-87, with Def.'s SUMF ¶¶ 28-29.) Drawing all inferences in favor of Plaintiff as the non-moving party, for the purpose of summary judgment, the Court presumes that CEO Newell criticized Plaintiff for swimming. See In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015) (requiring Courts to view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favor").

created. (Def.'s SUMF ¶¶ 49-51.) Brenda Swankoski became the sole Lead Technician in the Radiology Department, and permanently assumed March's duties. (Def.'s SUMF ¶ 57.)

Following March's dismissal, CEO Newell asked Kimberly Schneider to continue investigating the Radiology Department. (Def.'s SUMF ¶ 58.) HR Director Ore was transitioning into a per diem role, and Schneider was transitioning into the role of HR Director. (Def.'s SUMF ¶¶ 3-4.) In preparation for her investigation, Schneider met with Plaintiff and discussed issues in the Radiology Department. (Def.'s SUMF ¶ 61.) Plaintiff told Schneider that there was discontent within the Department between two groups of employees: those loyal to Deborah March, and those loyal to Brenda Swankoski; and in Plaintiff's opinion, Swankoski was "not going to make it" as the Department's only lead technician. (Def.'s SUMF ¶¶ 63-65.)

Schneider continued to investigate, and met with fourteen to sixteen employees in total—approximately half of the technicians in the diagnostic modality of the Radiology Department, and one technician from the nuclear medicine modality. (Def.'s SUMF ¶¶ 11, 70, 73; Pl.'s SUMF ¶ 102.) Three of the technicians from diagnostics included Erica Knechel, Karen Kingsepp, and Karen Muth. (Def.'s SUMF ¶ 74.) Before Schneider began her investigation, these three technicians had made complaints to CEO Newell, which had prompted Ore's investigation into March. (Def.'s SUMF ¶¶ 37, 39-40.) The Knechel, Kingsepp, and Muth's complaints primarily detailed March's misbehavior, but also discussed Plaintiff and DeSanto's role in March's conduct. As to DeSanto, Knechel and Muth stated that DeSanto would defend March, and did not address the problems March caused. (Pl.'s SUMF ¶¶ 133-44.)

Schneider's interviews with the Radiology Department employees raised grievances about Plaintiff's leadership, including that she spoke "inappropriately" in front of employees, possessed a "poor style of communication with employees," perpetuated "interpersonal drama among

employees," failed to address the problems March caused in the department (and instead defended her), did not maintain confidentiality when employees confided in her, and was intentionally preventing Swankoski from succeeding in her role as the new Lead Technician. (Def.'s SUMF ¶¶ 75-83, 88-89, 96-97.) Many of the interviewed employees also expressed fear of retaliation from Plaintiff for speaking with Schneider. (Def.'s SUMF ¶ 84.) After hearing about these grievances, Schnedier never discussed them with Plaintiff. (Pl.'s SUMF ¶ 115.) In Plaintiff's deposition, however, she denied the substance of the complaints made against her. (Pl.'s SUMF ¶ 110.)

After Schneider's employee meetings, she prepared an assessment report on April 26, 2018, detailing her investigation. (Def.'s SUMF ¶¶ 104-05.) In addition to describing the issues March and Plaintiff caused within the Department, Schneider noted that DeSanto failed to address complaints about March that employees had brought to her attention. (Def.'s SUMF ¶ 106, Def.'s MSJ Ex. 11 at P6.) The report recommended, among other things, that Plaintiff be terminated "for creating and allowing an environment of fear and retaliation with her staff." (Def.'s SUMF ¶ 106.) Three days later, Defendant suspended Plaintiff from her position, and ultimately dismissed her on May 2, 2018. (Def.'s SUMF ¶¶ 98, 110, 112.) Plaintiff received a letter from Defendant that explained that she had been dismissed because she "fostered and created a dysfunctional work environment and inhibited teamwork with radiology technicians, and that the hospital had no confidence in the leadership . . . ." (Pl.'s SUMF ¶ 114.) Sometime after Schneider completed her investigation, Defendant misplaced Schneider's investigatory file, which included the notes from her interviews. (Pl.'s SUMF ¶ 103.)[3]

[3] In its place, Defendant attached to its Motion for Summary Judgment eight sworn declarations made by employees who interviewed with Schneider during the investigation. (Def.'s MSJ Ex. 12-19.)

Plaintiff was sixty-three years-old when Defendant dismissed her. (Def.'s MSJ Ex. 3, Polen Dep. 21:20-21; Def.'s SUMF ¶ 112.) In the period between Plaintiff's dismissal and the hiring of a permanent replacement, DeSanto assumed Plaintiff's duties as Interim Director of Radiology. (Def.'s SUMF ¶ 113.) Plaintiff's permanent replacement, Beth Prajzner, is approximately ten years younger than Plaintiff. (Pl.'s SUMF ¶¶ 1, 157.)

In addition to Plaintiff, Defendant also dismissed Judi Batterson from her position as Director of Maternal Women's Health at Pottstown Hospital for unrelated reasons. Like Plaintiff, Batterson reported to CNO Pierce. Batterson also had issues communicating with her staff, and multiple employees had complained about their interactions with her. (Pl.'s SUMF ¶¶ 158-59.) Defendant placed Batterson on an action plan before terminating her employment. (Pl.'s SUMF ¶ 158.)

Plaintiff filed a Complaint in this Court, which alleged that Defendant discriminated against her because of her age and disability, and retaliated against her for invoking her rights under the FMLA. (ECF 1.) Defendant filed a Motion for Summary Judgment, seeking to dismiss the Complaint in its entirety. (ECF 13.) Plaintiff filed a Response in Opposition, and Defendant filed a Reply. (ECF 16, 17.) This Court held oral argument on Defendant's motion on December 3, 2019. After argument, Plaintiff and Defendant filed supplemental briefs. (ECF 20, 21.)

## III. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the

governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. FED. R. CIV. P. 56(c).

## IV. PARTIES' CONTENTIONS

Both parties agree that the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), controls the analysis of Plaintiff's discrimination and retaliation claims. Under that framework, it is the plaintiff's initial burden to "establish a prima facie case of discrimination [or retaliation]." Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014). If the plaintiff can establish a prima facie case, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason" for its course of action. Id. Once the defendant articulates

such a reason, "[t]he burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination [or retaliation]." Id.

### A. Defendant's Arguments

Defendant argues that summary judgment is appropriate on Plaintiff's FMLA retaliation and disability discrimination claims because she has not shown the necessary causal link to establish a prima facie case concerning those claims. Defendant contends that the nearly three-month gap between Plaintiff's second FMLA leave and her dismissal is not unduly suggestive of a discriminatory or retaliatory motive, and there are no comments that would allow a reasonable jury to make the causal inference required for a prima facie case of FMLA retaliation or disability discrimination.

Defendant also argues that Plaintiff has not submitted evidence to show that its legitimate, non-discriminatory reason for dismissing Plaintiff was pretext for discrimination or retaliation. Defendant asserts that it dismissed Plaintiff because she fostered and created a dysfunctional work environment, and the Hospital had no confidence in her leadership. Defendant contends that Plaintiff has not submitted evidence from which a reasonable jury could find that its proffered non-discriminatory reason for Plaintiff's dismissal was pretextual, and therefore summary judgment must be granted on all of Plaintiff's claims. Defendant rests its argument on the results of its internal investigation, and argues that Plaintiff's evidence does not call into question the investigation's validity, which formed the basis of Defendant's reason for terminating Plaintiff's employment.

### B. Plaintiff's Arguments

Plaintiff argues that she has submitted enough evidence to show the requisite causal link between her FMLA leave, her shoulder disability, and her dismissal. Plaintiff points to the

temporal proximity between her FMLA leave and her dismissal, as well as comments made by CEO Newell and CNO Pierce about her FMLA leave that she contends shows a pattern of antagonism. Taken together, Plaintiff argues, these two factors provide the causal link necessary to establish a prima facie case and survive summary judgment.

Plaintiff challenges Defendant's proffered non-discriminatory reason by attacking Schneider's investigation. Plaintiff contends that Schneider's investigation was flawed because she failed to interview Plaintiff about the complaints before submitting her report. Plaintiff also raises Defendant's disparate treatment of her when compared to Operations Manager DeSanto, and Director of Maternal Women's Health Batterson, both of whom Plaintiff contends were treated more favorably than her despite being confronted with similar complaints. Plaintiff also notes that Schneider's report is inconsistent with Plaintiff's prior performance evaluation, and asks the Court to take an adverse inference from Defendant's misplacement of Schneider's investigatory file. Plaintiff contends that this evidence creates a genuine issue of material fact and defeats summary judgment.

## V. DISCUSSION

### A. Plaintiff's Prima Facie Case

At summary judgment, to establish a prima facie case of FMLA retaliation, it is Plaintiff's initial burden to point to evidence in the record that at creates a genuine factual dispute about each of the following three elements: "(a) [the] invocation of an FMLA right, (b) termination, and (c) causation." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012). Similarly, a prima facie case of disability discrimination requires evidence that Plaintiff "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006).

Both causes of action require Plaintiff to show a causal link between either her protected activity or her shoulder disability, and her dismissal. Defendant's challenge to Plaintiff's prima facie case concerns only whether such a causal link exists. Here, the temporal proximity between Plaintiff FMLA leave and her dismissal, when combined with CEO Newell and CNO Pierce's antagonistic comments, presents enough evidence of FMLA retaliation and disability discrimination to establish a prima facie case at this stage.

Establishing a prima facie case of disability discrimination and FMLA retaliation is not meant to be an onerous burden on a plaintiff. Suarez v. Penn. Hosp. of Univ. of Penn. Health Sys., No. 18-1596, 2018 WL 6249711, at *5 (E.D. Pa. Nov. 29, 2018) (Pappert, J.). The Third Circuit has held that a three-month gap between a protected activity and dismissal can establish a causal link when it is accompanied by other evidence that the protected activity antagonized the employer. Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005). Here, because Plaintiff's shoulder disability was the precursor to her FMLA leave, if Plaintiff establishes a prima facie case of FMLA retaliation, she also establishes a prima facie case of disability discrimination.

Defendant terminated Plaintiff's employment two months and nineteen days after she began her second FMLA leave. This puts Plaintiff's case within the category that could be covered by Fasold. In addition, there is evidence that CEO Newell expressed frustration with Plaintiff's behavior during her FMLA leave, including evidence that he accused Plaintiff of swimming in the Cayman Islands and questioned her need to be on FMLA leave. (Pl.'s SUMF ¶¶ 85-87.) CNO Pierce also commented on how long Plaintiff might be out if she had another shoulder surgery. (Pl.'s SUMF ¶¶ 41-42.) A reasonable jury could interpret these remarks as innocuous, or as evidence of antagonism. Considering Plaintiff's relatively light burden at the prima facie case

stage, and giving her the benefit of all reasonable inferences, the Court considers these comments as evidence of antagonism.

The temporal proximity between Plaintiff's invocation of her rights under the FMLA, her shoulder disability, and her dismissal, when combined with the antagonistic remarks made by CEO Newell and CNO Pierce, provide enough of a link between Plaintiff's leave and her dismissal to survive summary judgment.

**B. Pretext**

Plaintiff concedes that Defendant has put forth a legitimate non-discriminatory reason for her dismissal: that she created and fostered a dysfunctional work environment, and Defendant lost faith in her leadership abilities. Thus, to survive summary judgment, Plaintiff must raise evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason such that "a reasonable factfinder could rationally find [it] 'unworthy of credence,' and hence infer 'that [Defendant] did not act" for that reason. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (citation omitted). If Plaintiff's evidence could cause a reasonable jury to disbelieve Defendant's proffered non-discriminatory reason, Plaintiff can survive summary judgment on the strength of her prima facie case alone. Id. at 764.

Plaintiff has submitted evidence from which a reasonable jury could question Schneider's investigation, and thus disbelieve Defendant's proffered reason for dismissing Plaintiff. Here, Plaintiff denied the substance of the complaints underlying the conclusions in Schneider's report. (Pl.'s SUMF ¶ 110.) While an unadorned denial does not, on its own, impeach the conclusions of an internal investigation, because Plaintiff's first opportunity to respond to the allegations was in her deposition, and because Defendant misplaced Schneider's entire investigatory file, Plaintiff's denial carries more weight in this instance. Schneider's investigatory report also came to

conclusions about Plaintiff's leadership and teamwork abilities that were directly contradicted by Plaintiff's performance evaluation less than one year earlier. (Compare Pl.'s Opp. Ex. G at 3-8, with Def.'s MSJ Ex. 11.)

The evidence also tends to show that Defendant responded to complaints about Plaintiff differently than complaints about other employees. The employees in the Radiology Department complained about Operations Manager DeSanto's behavior concerning March's misconduct, in addition to Plaintiff's. (Pl.'s SUMF ¶¶ 133-44.) But instead of disciplining DeSanto, Defendant promoted her to Interim Director of Radiology. (Def.'s SUMF ¶ 113.) Schneider maintained that she never received any grievances about DeSanto, but her report parallels Erica Knechel, Karen Kingsepp, and Karen Muth's written complaints about DeSanto. (Compare Pl.'s Opp. Ex. R at P301, P303; Pl.'s Opp. Ex. S at P306, P308; Pl.'s Opp Ex. T at P394, with Def.'s MSJ Ex. 11 at P6.) In addition, Defendant's dismissal of Plaintiff did not follow the progressive approach outlined in Defendant's Disciplinary Policy. (Pl.'s SUMF ¶ 31.) In contrast, before dismissing Director of Maternal Women's Health Batterson due to complaints similar to Plaintiff's, Defendant placed Batterson on an action plan. (Pl.'s SUMF ¶ 158.)

Defendant cites Money v. Provident Mutual Life Ins. Co., 189 F. App'x 114 (3d Cir. 2006) (non-precedential), for the proposition that an employment decision made in reliance on an internal investigation is virtually unassailable, even if it was deliberately insufficient. Defendant contends that the Court in Money considered the argument that an investigation was deliberately insufficient as nothing more than a naked credibility attack insufficient to defeat summary judgment. But the naked credibility attack in Money was the plaintiff's underlying contention that the human resources manager in that case lied about the extent of the investigation, not that the investigation was deliberately insufficient. 189 F. App'x at 116-17. After Money, a plaintiff can challenge an

employment decision based on the results of an investigation if he or she presents evidence that the investigation was conducted deficiently enough for a reasonable jury to doubt its legitimacy. See Rodriguez v. Forthright, 665 F. App'x 204, 208 (3d Cir. 2016) (non-precedential) (holding that a plaintiff can survive summary judgment "when an employer does not conduct a fair investigation or bases its decision on facially inaccurate or unreliable evidence").

When considered collectively, Plaintiff's evidence would permit a reasonable jury to doubt the conclusions reached in Schneider's investigation, and thus question the veracity of Defendant's proffered reason for Plaintiff's dismissal. A reasonable jury could, from this evidence, find that Defendant's non-discriminatory reason for Plaintiff's dismissal was pretext for a discriminatory or retaliatory motive. There are simply too many question marks surrounding Schneider's investigation of the Radiology Department to grant summary judgment in this case.

## VI. CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.

O:\CIVIL 18\18-4025 Polen v Pottstown Hospital\18cv4025 - Memo re MSJ 12162019.docx